1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FILED ____ENTERED
LODGED____RECEIVED

MAR 27 2007    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY   WESTERN DISTRICT OF WASHINGTON
DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

MICHELE SUGGETT and DON JAMES,
individually and on behalf of all similarly
situated;

      Plaintiffs,

vs.

MENU FOODS, a foreign corporation; THE
IAMS COMPANY, a foreign corporation;
EUKANUBA, a foreign corporation; DOG
FOOD PRODUCERS NUMBERS 1-100 and
CAT FOOD PRODUCERS 1-100; and DOES
1-100;

      Defendants.

Case No.: **CV7   457**RSM

**CLASS ACTION COMPLAINT**



07-CV-00457-CMP

## I.   NATURE OF ACTION

1.  Plaintiffs bring this action as a Class Action pursuant to FRCP 23 on behalf of all
    persons who purchased any dog or cat food produced by any of the above-named
    defendants and/or had a dog or cat become ill or die as a result of eating same.

2.  The defendants are producers and distributors of, inter alia, dog and cat food. Menu
    Foods produces dog and cat food under familiar brand names such as Iams, Eukanuba
    and Science Diet. Menu Foods distributes its dog and cat food throughout the United

CLASS ACTION COMPLAINT - 1

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738 7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

States to retailers such as Wal-Mart, Kroger and Safeway.

3. Dog and cat food which the defendants produced has caused an unknown number of dogs and cats to become ill and die.

4. To date, Menu Foods has recalled 50 brands of dog food and 40 brands of cat food which are causing dogs and cats to become ill. All recalled food to date is of the "cuts and gravy wet" style.

5. As a result of the Defendants' actions, Plaintiffs and other Class members have suffered noneconomic and economic damage.

## II. JURISDICTION, PARTIES, AND VENUE

6. This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) based on diversity and an amount of controversy in excess of $75,000. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the Defendants systematically and continuously sold their product within this district, and Defendants transact business within this district.

8. Eleven-year-old, female canine named Shasta ("Shasta") was regarded by Plaintiffs as their ward, sentient personalty, and member of their family.

9. Plaintiffs MICHELE SUGGETT and DON JAMES ("Plaintiffs") are, and at all times herein were, residents of this judicial district and the owners/guardians of Shasta.

10. Defendant Menu Foods is, upon information and belief, a corporation organized under the laws of Canada that transacts business in Washington State and Oregon State.

11. Defendant The Iams Company, is upon information and belief, a foreign corporation that transacts business in Washington State and Oregon State.

12. Defendant Eukanuba, is upon information and belief, a foreign corporation that transacts business in Washington State and Oregon State.

13. There are numerous other persons or entities, DOG FOOD PRODUCERS, CAT FOOD PRODUCERS, AND DOES 1-100, identities presently unknown to Plaintiffs who are, and were at all times mentioned herein, acting in concert or are jointly and severally liable with the above named Defendants. Each of the DOE Defendants sued herein under a fictitious name is responsible in some manner for the events and occurrences referred to herein. When the true names, capacities and involvement of said Defendants are ascertained, Plaintiffs will seek leave to amend the complaint accordingly.

CLASS ACTION COMPLAINT - 2

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

### III. CLASS ACTION ALLEGATION

14. Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class (the "Class") composed of all persons who purchased any dog or cat food which was produced by the defendants and/or has had a dog or cat become ill or die as a result of eating the food. Plaintiffs reserve the right to modify this class definition prior to moving for class certification.

15. This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.    Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but is estimated to be at least in the hundreds, if not thousands considering the fact that Menu Foods has identified 50 dog foods and 40 cat foods which may be causing harm to companion animals.

c.    Plaintiffs' claims are typical of those of other Class members, all of whom have suffered harm due to Defendants' uniform course of conduct.

d.    Plaintiffs are members of the Class.

e.    There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). The common issues include, but are not limited to, the following:

    i.    Did the defendants make representations regarding the safety of the dog and cat food they produced and sold?

    ii.    Were the defendants' representations regarding the safety of the dog and cat food false?

    iii.    Did the defendants' dog and cat food cause or allow Plaintiffs and other Class members' companion animals to become ill or die?

    iv.    Did the defendants produce a hazardous product for nonhuman animal consumption? If so, did this occur as a result of negligent, grossly negligent, reckless, or intentional conduct?

CLASS ACTION COMPLAINT - 3

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

v.    Were Plaintiffs and other Class members damaged?

f.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

g.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and has retained counsel competent in the prosecution of class actions to represent themselves and the Class;

h.    Without a class action, the Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

i.    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

j.    This action will foster an orderly and expeditious administration of Class claims, economies of time, effort and expense, and uniformity of decision;

k.    Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Class claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Class members;

l.    This action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Class can seek legal redress for the harm caused them by Defendants.

m.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

16. The Claims in this case are also properly certifiable under applicable law.

## IV. GENERAL ALLEGATIONS

17. Plaintiffs were the owners and guardians of Shasta, a female Pomeranian.

18. Plaintiffs purchased contaminated Eukanuba Adult Bites in Gravy (lamb & rice, beef & gravy, savory chicken) ("contaminated food") on or about February 16, 2007 from Petsmart.

CLASS ACTION COMPLAINT - 4

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

19. Plaintiffs started feeding the contaminated food to Shasta on or about March 15, 2007.

20. After eating the contaminated food, Shasta became extremely ill, causing the Plaintiffs to take her to a veterinarian on or about March 19, 2007. The veterinarian informed them that Shasta suffered devastatingly acute renal failure. On or about March 20, 2007, Shasta arrested and died.

21. Plaintiffs witnessed Shasta's deceased body shortly after she died and before a substantial change in her condition and location.

22. In March 2007 Menu Foods recalled 50 brands of cuts and gravy wet-style dog food and 40 brands of cuts and gravy wet-style cat food which had caused dogs and cats to become ill. One common symptom in the sick animals was kidney failure, also known as acute renal failure.

23. The contaminated food that Shasta consumed is one of the brands that Menu Foods recalled.

24. The Plaintiffs lost Shasta's intrinsic value, as based on her unique qualities, characteristics, training, and bond, as well as the loss of her utility, companionship, love, affection, and solace. At the time of her death, Shasta had no fair market value and could not be replaced or reproduced. Rather, she had an intrinsic value.

25. The Plaintiffs owned and formed a relationship with Shasta for 11 years. She was a close family companion throughout that period and had special value, aiding Plaintiffs in their enjoyment of life, well-being, growth, development, and daily activities.

26. As a result of Defendants' actions causing Shasta's death, the Plaintiffs have suffered loss of enjoyment of life, interference with use and quiet enjoyment of their realty and personalty, and general damages pertaining to loss of use.

27. As a result of Defendants' acts and omissions the Plaintiffs and other Class members have suffered emotional and economic damage, including but not limited to mental anguish, loss or reduction of enjoyment of life, interference with use and quiet enjoyment of realty and/or personalty, wage loss, current and future veterinary and health-related bills, depreciation in or extinguishment of intrinsic, special, unique, or peculiar value, loss of use and/or companionship, actual, incidental, and consequential damages.

## FIRST CLAIM FOR RELIEF – UNJUST ENRICHMENT

28. Defendants were and continue to be unjustly enriched at the expense of the Plaintiffs and other Class members.

CLASS ACTION COMPLAINT - 5

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

29. Defendants should be required to disgorge this unjust enrichment.

## SECOND CLAIM FOR RELIEF – UNLAWFUL, DECEPTIVE, UNFAIR BUSINESS PRACTICES

30. Defendants' sale of tainted pet food constitutes an unlawful, deceptive and unfair business act within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and similar statutory enactments of other states (including consumer protection and consumer sales practice acts).

31. Defendants' sale of hazardous dog and cat food has the capacity to deceive a substantial portion of the public and to affect the public interest.

32. As a result of Defendants' unfair or deceptive acts or practices, Plaintiffs and other class members suffered injuries in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF – BREACH OF WARRANTY

33. Cat food and dog food produced by Menu Foods are "goods" within the meaning of Uniform Commercial Code Article 2.

34. Defendants' conduct as described herein constitutes breach of an implied or express warranty of affirmation.

35. Defendants' conduct as described herein constitutes breach of an implied warranty of merchantability.

36. Defendants' conduct as described herein constitutes breach of an implied warranty of fitness for a particular purpose.

37. As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and other class members have suffered damages in an amount to be proven at trial. Defendants had actual or constructive notice of such damages.

## FOURTH CLAIM FOR RELIEF – DECLARATORY RELIEF

38. This court has the authority to render a declaratory judgment pertaining to Plaintiffs and Class Members' rights, status and other legal relations.

39. Plaintiffs and Class Members are entitled to a declaratory judgment that, as a matter of law, their companion animals had no fair market value, no replacement value, but, rather, an intrinsic, peculiar, unique, or special value premised on their non-fungible and irreplaceable nature.

## FIFTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION

CLASS ACTION COMPLAINT - 6

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 ■ Bellingham, WA 98225
(360) 738-7273 ■ Facsimile: (360) 392-3936
adam@animal-lawyer.com

40. Defendants owed Plaintiffs and class members a duty to exercise reasonable care in representing the safety of its dog and cat foods.

41. Defendants falsely represented that its dog and cat food was safe for consumption by dogs and cats.

42. In reality, defendants' dog and cat food caused dogs and cats to become ill and, in some cases, to die.

43. Plaintiffs and class members reasonably relied on the information provided by Defendants regarding the safety of its dog and cat food.

44. As a proximate cause of Defendants' false representations, Plaintiffs and other Class members suffered damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45. IN THE ALTERNATIVE that Defendants' acts are not deemed intentional or reckless, Defendants' conduct was negligent insofar as they failed to take reasonable care to avoid causing Plaintiff and Class Members emotional distress in relation to the failure to warn and failure to produce safe food for nonhuman animal consumption. These actions or inactions caused Plaintiff and Class Members emotional distress. Said emotional distress was manifested by objective symptomology by some of the Class Members.

## SEVENTH CLAIM FOR RELIEF – NUISANCE

46. Defendants' behavior described above constitutes a private nuisance and public nuisance.

47. Under Washington law, specifically RCW 7.48.010 and 7.48.150 (private nuisance) and RCW 7.48.130 and RCW 7.48.210 (public nuisance), and similar anti-nuisance laws (at common law and by statute), Defendants are liable to plaintiffs for general damages sustained by virtue of their omission to perform a duty, which act, namely, allowing contaminated and poisoned food products to enter Plaintiff and Class Members' households under false pretenses of safety, resulting in pain, suffering, illness, and death to Class Members' companion animals, annoyed, injured, and endangered the comfort, repose, and safety of Plaintiffs and Class Members, essentially interfering in the comfortable enjoyment of their real and personal property and their lives.

## EIGHTH CLAIM FOR RELIEF – BREACH OF CONTRACT

48. Plaintiffs and Class members purchased dog and cat food produced by the defendants

CLASS ACTION COMPLAINT - 7

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

based on the understanding that the food was safe for their companion animals to consume.

49. The dog and cat food produced by the defendants was not safe for companion animals to consume and caused dogs and cats to become ill or die. The unsafe nature of the pet food constituted a breach of contract.

50. As a result of the breach, Plaintiffs and Class members suffered damages which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract, as the probable result of the breach of it.

51. To the extent defendants' breach was reckless, wanton, or intentional and defendants knew or had reason to know that, when the contract was made, breach would cause mental suffering for reasons other than pecuniary loss, defendants inflicted upon Plaintiffs and Class members emotional distress.

## NINTH CLAIM FOR RELIEF – GROSS NEGLIGENCE

52. In the event Defendants are not found to have acted recklessly, Plaintiffs and Class Members plead IN THE ALTERNATIVE that Defendants knew and/or should have known that there was a strong possibility that harm would be inflicted on Plaintiffs and Class Members as a result of their disregard in ensuring that safe foodstuffs entered the commercial dog and cat food supply, recalling the tainted product before the illness and death toll rose further, and/or not warning consumers of the tainted product.

53. Defendants acted indifferently to the high degree of manifest danger and erroneous destruction of sentient property, to wit, Class Members' companion animals, to which Plaintiffs and Class Members would be and was exposed by such conduct.

54. The proximate cause of Plaintiffs and Class Members' injuries was the grossly negligent conduct of Defendants in the above regard.

## TENTH CLAIM FOR RELIEF – PRODUCTS LIABILITY

55. Defendants are strictly liable under RCW 7.72.030 (and analogous products liability statutes around the nation) for proximately causing harm to Plaintiffs by manufacturing a product that was not reasonable safe in construction.

56. The proximate cause of Plaintiffs and Class Members' injuries was the grossly negligent conduct of Defendants in the above regard.

CLASS ACTION COMPLAINT - 8

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

57. Defendants may also be liable for design defects in the production of the contaminated food, as well as failing to warn of the design and/or manufacturing defects, making them liable under RCW 7.72.030 (and analogous products liability statutes around the nation).

## RESERVATION OF RIGHTS

58. Plaintiffs and Class Members reserve the right to amend the complaint to include additional causes of action and allegations as they are discovered in the course of litigation.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

2. Actual damages (including all general, special, incidental, and consequential damages), statutory damages (including treble damages), punitive damages (as allowed by the law(s) of the states having a legally sufficient connection with defendants and their acts or omissions) and such other relief as provided by the statutes cited herein;

3. For economic damages, representing the intrinsic, special, peculiar, or unique value of the Plaintiffs and Class Members' injured and/or killed companion animals, subject to proof and modification at trial;

4. For special and general damages relating to loss of the Plaintiffs' and Class Members' companion animals' utility (e.g., companionship) from date of loss to date judgment is entered;

5. For noneconomic damages, including emotional distress, interference with the Plaintiffs and Class Members' lives, and the use and quiet enjoyment of their realty and personalty, loss and/or reduction of enjoyment of life, subject to proof and modification at trial;

6. For incidental and consequential damages arising from breach of contract;

7. For burial, afterdeath, and death investigation expenses;

8. For wage loss and other aftercare expenses incurred during the companion animals'

CLASS ACTION COMPLAINT - 9

convalescence;

9. Prejudgment and post-judgment interest on such monetary relief;

10. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

11. Other appropriate injunctive relief;

12. The costs of bringing this suit, including reasonable attorneys' fees; AND

13. Such other relief as this Court may deem just, equitable and proper.

14. **NOTICE: Plaintiffs intend to seek damages in excess of $10,000. Accordingly, this case is not subject to RCW 4.84.250-.280.**

Dated this March 27, 2007.

ANIMAL LAW OFFICES

/s/ Adam P. Karp

Adam P. Karp, WSBA No. 28622
Attorney for Plaintiffs and Class Members
114 W. Magnolia St., Ste. 425
Bellingham, WA 98225
(888) 430-0001
Fax: (866) 652-3832
adam@animal-lawyer.com

CLASS ACTION COMPLAINT - 10

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 425 • Bellingham, WA 98225
(360) 738-7273 • Facsimile: (360) 392-3936
adam@animal-lawyer.com

# EXHIBIT H

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0211

**RECEIVED**

MAR 2 7 2007

AT 8:30 _____ 8:09 _____ M
WILLIAM T. WALSH, CLERK

**WEXLER TORISEVA WALLACE LLP**
Mark J. Tamblyn, Esq.
1610 Arden Way, Suite 290
Sacramento, California 95815
Phone: (916) 568-1100
Fax: (916) 568-7890

[Additional Counsel Listed on Signature Page]
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY WILSON, on behalf of himself and all others similarly situated, | : |
| Plaintiff, | : Civil Action No.: 07CV1456(NLH) |
| v. | : |
| MENU FOODS INCOME FUND, MENU FOODS, INC., a New Jersey corporation, MENU FOODS HOLDINGS, INC., and MENU FOODS MIDWEST CORPORATION, a Delaware corporation | : **CLASS ACTION COMPLAINT** |
| Defendants | : |

Plaintiff Larry Wilson ("Plaintiff"), individually and on behalf of all others similarly situated, alleges by and through his attorneys, upon information and belief, as follows:

131107 v1

## NATURE OF CASE

1.      Plaintiff brings this class action on behalf of himself and a class of consumers and entities who purchased brands of pet food manufactured by Defendants that caused pets to suffer severe illness or death. Pet owners, believing Defendants' products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and to the veterinary monitoring and treatment that became necessary after their pets consumed Defendants' pet food. Such expenses were even more extreme for those pet owners whose pets became terminally ill after consuming Defendants' pet food products. Such costs arose and were exacerbated by the undue amount of time taken by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants knew that pet illnesses and deaths could be related to their pet foods, Defendants waited for nearly a month before telling the public and the Food and Drug Administration (FDA) that it was recalling its products. Defendants' lethal products, and the companies' excessive delay in warning consumers and regulatory agencies as to its dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

1.  The Court has original jurisdiction over this class action pursuant to 28 U.S.C. §1332(d)(2).

2.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

3. The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## PARTIES

4. Plaintiff Larry Wilson resides at 1230 South Avenue Lodi, CA 95240.

5. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

6. Defendant Menu Foods Holdings, Inc. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware.

7. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

8. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

9. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods Holdings, Inc., Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

11. Defendants manufacture and sell pet food internationally and are the biggest

131107 v1

supplier of pet food in North America.

12. Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13. Defendants sell their brands internationally and in some of the largest major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

14. On March 16, 2007, Defendants, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" we pet food produced and distributed by Defendants, including over ninety different brands of dog and cat food. Some of the brands recalled include, Iams, Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet food recall in United States history.

15. However, Defendants waited an excessive period of time before deciding to recall its harmful and lethal products. Defendants first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall its products. *See, e.g.,* CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, *at* http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March 22, 2007). Rather than announcing its products could be harmful to pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct its own testing. Defendants conducted tests involving over 50 animals to observe reactions to its pet foods. Approximately one in six of the animals tested died. Yet, Defendants again waited until as many as seven test subjects died after eating its pet food before finally submitting its findings to the FDA and deciding that a recall and announcement to the

public would be necessary.

16.  Due in no small part to this unnecessary and protracted delay, as of March 21, 2007 there have been at least seventy-two reported pet deaths from kidney failure nationwide and additional deaths continue to be reported by the hour.  One source indicated that 1,715 dogs and cats were either sick or dead as a result of the recalled food products.  *See* http://www.petconnection.com/blog/ (last viewed March 22, 2007).

17.  Pet owners purchased Defendants' products believing them to be safe for pet consumption and beneficial to their pets.  However, the "cuts and gravy" style pet food that pet owners across the nation have fed their pets has proved to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

18.  Pet owners have incurred substantial expenses relating both to the purchase of Defendants' pet food and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated food products.  Indeed, several pet owners have accrued veterinary bills that have climbed into the several thousands of dollars.  Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for some, burying or cremating their pet.

19.  Currently, Defendants still have not identified the cause of the food toxicity.  However, aminopterin, a substance found in rat poisons, was recently discovered in the recalled foods.

20.  In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Defendants.  Defendants have failed to manage the high volume of incoming complaints.  Since instituting the recall, pet owners have been largely unable to reach Defendants' customer service representatives, often encountering busy signals or voicemail messages.  *See, e.g.,*

Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, *at*
http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS01/70
3200345/1066 (last viewed March 22, 2007).  To be sure, Defendants have been
criticized for not being cooperative with customers, for not getting helpful information
out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a
bunker mentality in times of trouble."  Joseph R. Perone, The Star-Ledger, *Menu Foods
Fails Test in Crisis Management*, March 21, 2007, *available at*
http://www.nj.com/starledger/stories/index.ssf?/base/business-
6/1174455.54784980.xml&coll=1 (last viewed March 23, 2007).

21.  Since the recall, Defendants have received scores of complaints and
questions from consumers who have purchased its contaminated pet food products and
from those whose pets have become ill or died after consuming those products.

22.  The complaints found throughout the Internet and in many of the news
stories mentioned above each contain the same common theme of consumers who
unwittingly purchased Defendants' food products and who were forced to take their pets
to veterinarians for medical treatment after their pets became extremely, and sometimes
terminally, ill.

23.  Plaintiff Larry Wilson purchased and fed *Special Kitty* brand wet pet food to
his cat, Simon.  *Special Kitty* is a brand of cat food recalled by Defendants.

24.  After eating the cat food, Simon became noticeably ill.  Mr. Wilson admitted
Simon to a veterinarian for diagnosis and treatment, where it was discovered that Simon
was suffering from kidney failure.

25.  In order to treat Simon's failing renal system, a veterinarian began
administering fluids to Simon intravenously and is continuing to monitor Simon's
condition.

26.  Simon's diagnosis, treatment and monitoring cost Mr. Wilson over $2,000 in
two days.  The veterinarian caring for Simon has suggested placing Mr. Wilson's cat on

dialysis for further treatment. However, this would cost Mr. Wilson an additional three to four thousand dollars – an amount Mr. Wilson cannot afford to pay.

## CLASS ACTION ALLEGATIONS

27.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

28.  Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

29.  **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

30.  **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

131107 v1

a.  Whether Defendants intentionally, recklessly or negligently authorized
    injurious pet food to enter the market;

b.  Whether Defendants failed to properly test their "cuts and gravy" style
    dog and cat food before market entry of such food;

c.  Whether Defendants intentionally, recklessly or negligently delayed in
    instituting a recall of its "cuts and gravy" style dog and cat food;

d.  Whether Defendants' recall is adequate and properly notifies potentially
    affected consumers;

e.  Whether Defendants have been unjustly enriched as a result of their
    conduct, as alleged herein; and

f.  Whether Plaintiff and members of the Class have sustained damages as a
    result of Defendants' conduct, and, if so, what is the appropriate measure
    of damages.

31. **Typicality**. Plaintiff's claims are typical of the claims of the members of the
Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog
or cat food manufactured, distributed, marketed and/or sold by Defendants.

32. **Adequacy of Representation**. Plaintiff will fairly and adequately protect
the interests of the members of the Class. Plaintiff has retained counsel experienced in
complex consumer class action litigation, and Plaintiff intends to prosecute this action
vigorously  Plaintiff has no adverse or antagonistic interests to those of the Class.

33. **Superiority**. A class action is superior to all other available means for the
fair and efficient adjudication of this controversy. The damages or other financial
detriment suffered by individual Class members is relatively small compared to the
burden and expense that would be entailed by individual litigation of their claims against
the Defendants. It would thus be virtually impossible for Class, on an individual basis, to
obtain effective redress for the wrongs done to them. Furthermore, even if Class
members could afford such individualized litigation, the court system could not.

Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

    34. In the alternative, the Class may be certified because:

        a.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

        b.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

        c.  Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

    35. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

    36. Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class. Such monies are the property of the Plaintiff and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiff and the

Class have an ownership interest. Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF

### [Negligence]

37. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

38. Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

39. Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

40. Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

41. Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

42. The losses and damages described herein were foreseeable and avoidable.

43. Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

## SECOND CLAIM FOR RELIEF

### [For Unjust Enrichment]

44. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

45. Defendants have received, and continue to receive, a benefit at the expense of Plaintiff and members of the Class. Defendants have knowledge of this benefit.

46. Defendants have charged and collected from consumers, including Plaintiff and members of the Class, money for dog and cat food that endangers the lives of their pets. Defendants thus have received benefits that they have unjustly retained at the expense of Plaintiff and members of the Class.

47. As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiff and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendants, and are therefore entitled to restoration of their monies.

## THIRD CLAIM FOR RELIEF

### [Breach Of Express Warranty]

48. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

49. Defendants expressly warranted that their "cuts and gravy" style pet food was suitable and safe for pet consumption.

50. Defendants also expressly warranted that "it manufacturer[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

51. Plaintiff and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

52. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

151107 v1

## FOURTH CLAIM FOR RELIEF

### [Breach Of Implied Warranty]

53.  Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

54.  Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

55.  Through their marketing, advertising, promotion and labeling of their "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform Commercial Code.

56.  Through their marketing, advertising, promotion and labeling, Defendants knew that Plaintiff and the Class would purchase their pet food for the ordinary purpose of providing nourishment to their pets.

57.  Defendants manufactured, distributed, marketed, advertised, promoted and sole their pet food for the ordinary purpose for which it was purchased by Plaintiff and the Class.

58.  Plaintiff and the Class relied upon Defendants' representations and warranties, and purchased and used Defendants' pet food for the ordinary purpose for which it was sold.

59.  Defendants' pet food purchased by Plaintiff and the Class were unfit for their ordinary purpose when sold.  Such food was sold while presenting a risk of risk of illness or death to pets.  Defendants have accordingly breached the implied warranty of merchantability by selling such unfit pet food.

60.  Plaintiff and the Class were damaged as a proximate result of Defendants' breach of warranty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the Class;

2.  For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3.  For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

4.  For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

5.  For pre-judgment and post-judgment interest;

6.  For reasonable attorneys' fees and costs of suit, including expert witness fees; and

7.  For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated:  March 27, 2007

By: _____

JOSEPH J. DEPALMA
**LITE DEPALMA GREENBERG &
RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Facsimile: (973) 623-0211

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone:  (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California  95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by his attorneys, hereby certifies that to the best of his knowledge, the matter in controversy is related to Paul Richard and Jennifer Richard, husband and wife, Charles Kohler and Alicia Kohler, husband and wife, v. Menu Foods Income Fund, a Canadian open-ended trust, Menu Foods Limited, a Canadian corporation, Menu Foods Holdings, Inc., a Delaware corporation, Menu Foods, Inc., a New Jersey corporation, Menu Foods Midwest corporation, a Delaware corporation, Menu Foods South Dakota, Inc., a Delaware corporation, ABC partnerships, XYZ corporations, filed in the District of New Jersey on March 27, 2007. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the fore going statements made by me are wilfully false, I am subject to punishment.

Dated: March 27, 2007

By: _____
JOSEPH J. DEPALMA
**LITE DEPALMA GREENBERG &
RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 623-3000

**LITE DePALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: 973-623-3000

**Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Larry Wilson, on behalf of himself and all others similarly situated,<br><br>                              Plaintiffs,<br><br>         v.<br><br>Menu Foods Income Fund, Menu Foods, Inc., a New Jersey Corporation; Menu Foods Holdings, Inc. and Menu Foods Midwest Corporation, a Delaware Corporation,<br><br>                              Defendant. | )<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>)  **CERTIFICATE OF**<br>)  **NON-ARBITRABILITY**<br>)<br>)<br>) |

Joseph J. DePalma, of full age, certifies that pursuant to L. Civ. R. 201.1 the within

matter is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000

and injunctive relief.

Dated: March 27, 2007

_____
Joseph J. DePalma

131109 v1

# EXHIBIT I

Gregg D. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, L.L.C.
262 East Main Street
Rockaway, New Jersey 07866
(973) 316-8100
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUZANNE THOMSON and ROBERT TRAUTMANN, on behalf of themselves and all others similarly situated | |
| Plaintiff | Civil Action No.: 2:07-cv- |
| v. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| MENU FOODS INCOME FUND (A Corporation organized under the laws of Canada); JOHN DOES 1 – 100 (Fictitious names for the person(s) and/or entities responsible for the damages complained of by the Plaintiffs herein) | |
| Defendants | |

## Civ. Rule 10.1 Statement

**PLAINTIFF:**

SUZANNE THOMSON

3379 Route 46, Apartment 9-F, Parsippany, New Jersey, 07054

ROBERT TRAUTMANN

3379 Route 46, Apartment 9-F, Parsippany, New Jersey, 07054

**DEFENDANTS:**

MENU FOODS INCOME FUND, 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

## JURISDICTION

1. Plaintiffs bring this action against defendants to redress violations of the statutes of the State of New Jersey and the common law.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391.

4. Service may be effected upon the defendant pursuant to the relevant portions of the Hague Convention.

## CLASS STATUS

1. The Plaintiffs bring their claims individually and on behalf of all others similarly situated.

2. The class consists of owners of pets throughout the United States who purchased tainted foods manufactured by the Defendant, subsequently fed the tainted foods to their pets, causing illness to their pets for which the class members were forced to seek veterinarian care for the pets or causing death to the pet.

3. The class is so large that it is impracticable to join all members of the class in a single lawsuit.

4. There are questions of law common to the claims of all members of the class.

5. There are questions of fact common to the claims of all member of the class.

6. The claims of the named Plaintiffs herein are typical of the claims of the members of the class.

7. The prosecution of separate claims by the members of the class would create an unreasonable risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

8.  The questions of law or fact common to the members of the class predominate over any
    questions affecting only individual members.

9.  A class action lawsuit is the superior method of handling the claims of the members of this
    class.

## FACTS COMMON TO ALL COUNTS OF COMPLAINT

1.  The named Plaintiffs herein are husband and wife and have at all relevant times been
    residents of the State of New Jersey.

2.  The Defendant herein is, upon information and belief, a Canadian corporation
    organized under the laws of that nation for the purpose of the manufacture and sale of
    pet foods.

3.  The Defendant manufacturers pet foods that are sold under various brand names
    throughout the world.

4.  The Plaintiffs are the owners of a purebred Himalayan cat that is kept as a pet, which
    was purchased in October 2006.

5.  Since the time the cat was purchased, the Plaintiffs have fed her "cuts and gravy"
    style cat food manufactured by the Defendant and sold under the Iams brand name.

6.  On or about Tuesday, March 13, 2007 the Plaintiff's cat began showing signs of
    illness including experiencing abdominal pain (as evidenced by loud cries when
    touched in that area) as well as sever and consistent diarrhea.

7.  The following day, the cat's illness progressed and the cat refused either eat any food
    or drink any water, continued experiencing abdominal pain as well as sever and
    consistent diarrhea, and became lethargic.

8.    The symptoms demonstrated by the cat owned by the named Plaintiffs herein are the same as reported by members of the plaintiff class throughout the United States.

9.    On Thursday, March 15, 2007 the Plaintiff's sought veterinarian treatment for their cat.

10.   At that time the veterinarian noted the abdominal pain and performed X-ray examinations to rule out any obstruction or foreign object ingestion.

11.   The X-ray examination revealed that the cat's gastrointestinal tract was free from any blockage or other foreign object.

12.   Because of the non-specific nature of the cat's symptoms, the veterinarian prescribed a medication for possible parasites and advised that if the cat's condition did not improve within the subsequent 48-hour period, further, more aggressive steps would need to be taken.

13.   For the 48-hours subsequent to the veterinarian care received by the cat, the cat's condition did not improve.

14.   On Saturday, March 17, 2007, a family member notified the Plaintiffs that the brand and style food that they fed to their cat had been recalled by the manufacturer.

15.   The press release issued by the Defendant on March 16, 2007, indicated that the "cuts and gravy" style cat food was being recalled.

16.   The reason for the recall was complaints about renal failure in pets who ingested the "cuts and gravy" style food.

17.   The signs of renal failure include the same symptoms shown by the Plaintiff's cat.

18. Immediately upon learning about the recalled food and the potential renal failure in their cat, the Plaintiffs rushed their cat to an emergency veterinarian hospital for treatment.

19. The cat was noted as being severely dehydrated by the staff at the emergency veterinarian hospital.

20. The cat was noted as having non-specific signs of infection and was immediately placed on intravenous fluids and medications.

21. The cat was hospitalized and monitored for approximately 24 hours.

22. The Plaintiffs herein expended over $1,000.00 for the care of their pet as a direct result of the animal ingesting tainted food manufactured by the Defendant.

23. The damages suffered by the Plaintiffs herein are similar to all members of the plaintiff class throughout the United States.

24. The aggregate claims of the members of the plaintiff class exceed $75,000.00.

## COUNT ONE
### (Product Liability)

25. The Plaintiffs repeat and reallege all of the allegations and statements set forth in each of the preceding paragraphs as if set forth herein at length.

26. The Defendant is a manufacturer of pet foods, which include the pet food purchased by the Plaintiff that was subsequently fed to the Plaintiff's pet cat as well as the pets belonging to all other members of the plaintiff class.

27. The pet food manufactured by the Defendant contained a material defect at the time it was manufactured.

28.    Upon information and belief the material defect was from an ingredient known as "whey gluten."

29.    Upon information and belief the defect contained within the "whey gluten" was a poison known as "aminopterin."

30.    Aminopterin is used in some countries as rat poison.

31.    The inclusion of the tainted ingredient is a deviation from the formula specifications of the pet food.

32.    The inclusion of the tainted ingredient is a deviation from the performance of standards of the Defendant.

33.    The inclusion of the tainted ingredient is a deviation from identical units manufactured by the Defendant using the same manufacturing specifications and/or formula.

34.    The defect was present in the product prior to the product leaving the Defendant's control.

35.    The Plaintiffs herein together with all other members of the plaintiff class are reasonably foreseeable users of the Defendant's products.

36.    The Plaintiff's herein, along with all other members of the plaintiff class, used the Defendant's product in a reasonably foreseeable fashion.

37.    The pet food manufactured by the Defendant was not reasonably fit, suitable, or safe for its intended purpose.

38.    As a result of feeding the pet food manufactured by the Defendant which contained aforementioned product defect, the Plaintiffs, along with all other members of the Plaintiff class, have been damaged.

39.    The Defendant is strictly liable for defects contained in the products it manufactures.

**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly

situated, demand judgment against the Defendant on COUNT ONE of their Complaint, for:

    a.    Compensatory damages;

    b.    Consequential damages;

    c.    Incidental damages;

    d.    Attorneys fees, costs, costs of investigation, litigation and interest;

    e.    For such further relief as the Court deems equitable and just;

## COUNT TWO
## (Breech of Implied Warranty of Fitness for Particular Purpose)

40.    The Plaintiffs repeat and reallege all of the allegations and statements set forth in
       each of the preceding paragraphs as if set forth herein at length.

41.    At all times relevant the Plaintiffs and all other members of the plaintiff class used the
       pet food manufactured by the Defendant as food for their pets.

42.    The pet foods purchased by the Plaintiffs and all other members of the plaintiff class
       were sealed in the original packaging from the Defendant at the time they were
       purchased and remained so up until the time of their use.

43.    The Plaintiff's fed the tainted pet food manufactured by the Defendant to their pet cat.

44.    All other members of the plaintiff class fed the tainted pet foods to their pets.

45.    As a result of the defect in the pet food, the Plaintiffs' cat along with the pets
       belonging to the other members of the plaintiff class became severely ill and required
       veterinarian treatment at great expense to the Plaintiffs and all other members of the
       plaintiff class.

46.  The Defendant, in releasing the pet food it manufactured to various distributors and
     into the stream of commerce, impliedly warranted that the pet food it manufactured
     was fit for consumption by pets and that it was safe and suitable for that purpose.

47.  In purchasing and using the pet food manufactured by the Defendant, the Plaintiffs
     and all other members of the plaintiff class relied on the Defendant's skill and
     judgment as well as the implied warranty of fitness for the purpose for which the
     Plaintiffs and all other members of the plaintiff class purchased and used the pet food.

48.  The pet food manufactured by the Defendant was not fit for its intended purpose and
     as a result of the Defendant's breach of warranty of fitness of the pet food the
     Plaintiffs and all other members of the plaintiff class  have sustained damages.

49.  The Defendant is on notice of the defect contained within its product as the
     Defendant issued a press release wherein it acknowledged the defect and recalled the
     defective products on March 16, 2007.

     **WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly
situated, demand judgment against the Defendant on COUNT THREE of their Complaint, for:

     a.    Compensatory damages;

     b.    Consequential damages;

     c.    Incidental damages;

     d.    Attorneys fees, costs, costs of investigation, litigation and interest;

     e.    For such further relief as the Court deems equitable and just;

## COUNT THREE
### (Breach Of Contract)

50.  The Plaintiffs repeat and reallege all of the allegations and statements set forth in
each of the preceding paragraphs as if set forth herein at length.

51.  The parties hereto were parties to an implied contract for the manufacture and
purchase of pet food.

52.  Pursuant to that agreement the Defendant had an affirmative duty to ensure that the
pet foods it manufactured were fit for consumption.

53.  The pet food manufactured by the Defendant was not fit for consumption.

54.  The Defendant breached the agreement it had with the Plaintiffs and all other
members of the plaintiff class when it failed to ensure the pet foods it manufactured
were fit for consumption.

55.  As a direct and proximate result of the breaches referenced in the preceding
paragraphs, the Plaintiffs and all other members of the plaintiff class have been
damaged.

**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly
situated, demand judgment against the Defendant on COUNT THREE of their Complaint, for:

a.    Compensatory damages;

b.    Consequential damages;

c.    Incidental damages;

d.    Attorneys fees, costs, costs of investigation, litigation and interest;

e.    For such further relief as the Court deems equitable and just;

## COUNT FOUR
### (Negligence)

56.    The Plaintiffs repeat and reallege all of the allegations and statements set forth in
each of the preceding paragraphs as if set forth herein at length.

57.    The Defendant owed a duty to the Plaintiffs as well as all other members of the
plaintiff class to ensure that the pet foods it manufactured were fit for consumption.

58.    The pet foods manufactured by the Defendant were not fit for consumption.

59.    When the Plaintiff's pet ingested the pet foods manufactured by the Defendant, the
Plaintiff's pet became severely ill.

60.    Similarly the pets owned by the other members of the plaintiff class became ill after
having ingested the tainted pet food manufactured by the Defendant.

61.    As a result the Plaintiffs and all other members of the class were forced to seek
veterinarian treatment for their pet, causing the Plaintiffs and all other members of the
plaintiff class to suffer damages.

62.    Further evidence of the Defendant's negligence can be found in their violation of the
Federal Food, Drug, and Cosmetic Act codified at 21 U.S.C. 301.

63.    The damages suffered by the Plaintiffs and all other members of the plaintiff class
were as a direct and proximate cause of the Defendant's breach of their duty to ensure
that the pet foods it manufactured were fit for consumption.


**WHEREFORE**, the Plaintiffs, on their own behalf and on behalf of all others similarly
situated, demand judgment against the Defendant on COUNT FOUR of their Complaint, for:

a.    Compensatory damages;

b.    Consequential damages;

c.    Incidental damages;

d.    Attorneys fees, costs, costs of investigation, litigation and interest;

e.    For such further relief as the Court deems equitable and just;

## REQUEST FOR DISCOVERY

Please be advised that pursuant to Federal Rule of Civ. Proc. 26, demand is hereby made

for all parties to this action to provide to the Plaintiffs all discovery as to all issues.

## DEMAND FOR JURY TRIAL

Please take notice that the Plaintiffs hereby demand a trial by jury on all claims so triable

in the above captioned matter.

## DESIGNATION OF TRIAL ATTORNEY

Please Take Notice, that Gregg D. Trautmann, Esq. of the law firm of Trautmann &

Associates, LLC, is hereby designated as trial attorney for the Plaintiffs in the above captioned

matter.

TRAUTMANN & ASSOCIATES, LLC
Attorneys for Plaintiff

Date: March 23, 2007                    By:  /s/ Gregg D. Trautmann, Esq.
                                             Gregg D. Trautmann, Esq. (GT3687)

# EXHIBIT J