ABBEY SPANIER RODD ABRAMS
  & PARADIS, LLP
Arthur N. Abbey Gardy
Stephen T. Rodd
Orin Kurtz
212 East 39th Street
New York, New York 10016
(212) 889-3700

MCLAUGHLIN & STERN, LLP
Alan E. Sash
260 Madison Avenue
New York, New York 10016
Tel: 212-448-1100
Fax: 212-448-0066

Attorneys for Plaintiff

**RECEIVED**

**MAR 2 6 2007**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA TINKER, Individually and On Behalf Of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>          vs.<br><br>MENU FOODS, INC.,<br><br>          Defendant. | Civil Action No. 07 CV 1408 (NLH)<br>Judge:<br><br><br>**CLASS ACTION COMPLAINT FOR CONSUMER FRAUD**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Linda Tinker ("Plaintiff") brings this class action complaint against defendant Menu Foods, Inc., ("Defendant," "Menu Foods" or the "Company") to seek redress for herself and all others whose dogs and/or cats were injured by consumption of contaminated food manufactured and sold by Defendant.

## NATURE OF THE CASE

1.      Defendant knowingly and intentionally sold pet food that was causing acute renal failure in dogs and cats. Defendant knew of such harm as early as February 20, 2007 and did not announce a recall to the public until nearly a month later, on March 16, 2007. Thus, hundreds, if not thousands, of animals died while Defendant continued to profit from the sale of contaminated pet food. On March 23, 2007, ABC News reported that rat poison—nonetheless rat poison that is illegal in the United States—was to blame for the contamination that was killing and continues to kill animals. The chemical is called aminopterin.

2.      On March 16, 2007, Defendant announced that it was recalling nearly one hundred brands of dog and cat food that it had manufactured at its facilities in Emporia, Kansas and Pennsauken, New Jersey, as a result of consumer complaints that, after consuming those brands of food, dogs and cats had died from acute renal failure.

3.      According to the United States Food and Drug Administration (the "FDA"), Defendant waited nearly one month after it became aware that animals were dying from its product to announce the recall. Defendant received several complaints from consumers on and after February 20, 2007. Beginning on February 27, 2007, Defendant performed internal testing and fed its food to between forty and fifty animals. On March 2, 2007, the first of those animals exhibited signs of kidney failure and died and eight more died soon thereafter. Defendant also continued to receive complaints that animals were suffering from acute renal failure as a result of eating its food. However, Defendant did not announce the recall until March 16, 2007. In that time, while Defendant continued to profit, animals were sickened and killed by contaminated pet

food. Plaintiff and the class was damaged as a result of Defendant's deliberate sale of unsafe pet food.

## JURISDICTION AND VENUE

4.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendant is a New Jersey corporation.

## THE PARTIES

6.    Plaintiff Linda Tinker is, and at all times relevant to this Action, has been a California resident. Plaintiff purchased Special Kitty Select pet food for her cat at Wal-Mart in Paso Robles, California. After consuming the Special Kitty Select pet food, Plaintiff s cat suffered from sever renal failure, as diagnosed by a veterinarian, and had to be euthanized. Plaintiff called Defendant to complain on March 16, 2007 and was told that a representative would call Plaintiff back. As of the date of filing this Complaint, Plaintiff has not received a call back from Defendant.

7.    At all times relevant to this Action, Defendant Menu Foods, Inc. was and is a New Jersey corporation, with its principle place of business located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey, 08110. Menufoods is a major manufacturer of "wet food" for dogs and cats. Defendant manufactures dog and cat food which is sold under the names of a number of national retailers such as Wal-Mart, Safeway, Kroger and other store brands. Defendant manufactures pet foods for 17 of the top 20 North American retailers and is also a contract manufacturer for the top branded food

companies, including Proctor & Gamble Co. Defendant's food is sold, among other names, under the Iams and Eukanuba brands. Defendant's three U.S. and one Canadian factory produce more than 1 billion cans of wet food per year. *Defendant is majority owned by Menu Foods Income Fund, based in Ontario, Canada.*

## SUBSTANTIVE ALLEGATIONS

8.      On February 20, 2007, Defendant received the first of several consumer complaints regarding its products. The complaints received involved "cuts and gravy" style dog food manufactured at Defendant's Emporia, Kansas manufacturing facility between December 3, 2006 and March 6, 2007.

9.      On February 27, 2007, Defendant began to test the safety of its pet foods by performing a "taste trial" on its own animals. Defendant performed the "taste trial" by feeding the contaminated food to between forty and fifty dogs and cats. The tests killed nine of Defendant's own animals.

10.     The first animal to die as a result of Defendant's test was a cat, which exhibited signs of kidney failure and died on March 2, 2007—two weeks before Defendant announced the recall.

11.     Subsequently, eight more of Defendant's cats died from eating Defendant's food.

12.     Thus, nearly twenty percent of the animals that ate Defendant's "cuts and gravy" food—at least nine of forty to fifty animals given the food by Defendant—died after eating that food.

13.    However, in the following weeks, Defendant continued to sell and profit from the contaminated "cuts and gravy" pet food while animals throughout the country continued to suffer acute renal failure and die from eating Defendant's food.

14.    Finally, on March 16, 2007, Defendant announced that it was recalling all of its "cuts and gravy" style dog and cat food produced at its facilities in Emporia, Kansas, and New Jersey between December 2, 2006 and March 6, 2007.

15.    The list of foods recalled was extensive. Defendant recalled nearly 100 brands of dog and cat food. The list of recalled products is attached to this Complaint as Exhibit A. Approximately 60 million cans and pouches of pet food in North America have been recalled.

16.    Panic ensued among pet owners as they looked at the list and saw that their pets had eaten the now-recalled brands of food.

17.    According to MSNBC, the Animal Medical Center in Manhattan tested 143 animals for kidney failure between March 17, 2007 and March 21, 2007. Of those, ten were confirmed to be diet-related cases, and one cat died.

18.    According to the New York Times, Lisa Moses, a staff veterinarian at Angell Animal Medical Center-Boston said the emergency room had been "flooded" with pet owners who were worried that their animals may suffer acute renal failure as a result of consuming contaminated food manufactured by Defendant. Angell Animal Medical Center said that one cat had died and two dogs had been stricken with kidney failure in the last week and that it was reviewing all renal cases it had seen in the last few months.

19.    "People are panic-sticken," Dr. Moses told the Times. "This is really scary, and I don't blame them."

20.    After the recall, the FDA sent inspectors to Defendant's manufacturing plants in Kansas and New Jersey.

21.    On March 21, 2007, Defendant stated that it could not exactly what about its food caused pets to suffer kidney failure.

22.    In an interview with the Associated Press, Paul Henderson, the Chief Executive and President of Menu Foods, said Menu Foods was looking at a single ingredient as the cause of acute kidney failure in animals that had eaten food manufactured by Menu Foods.  Mr. Henderson would not identify the single ingredient, but the FDA said the investigation was focusing on wheat gluten, a protein source used to thicken the "gravy" in wet pet food.

23.    According to the New York Times, Menu Foods and the FDA have said the acute kidney failure in animals had coincided with the timing of the Company's use of a new wheat gluten supplier.

24.    Finally, on March 23, 2007, ABC news reported that investigators determined that a rodent-killing chemical—aminopterin—is the toxin the tainted pet food that killed the animals.

25.    According ABC News, the Animal Medical Center and other veterinarians learned of an additional 200 reported cases of kidney failure in animals and suspect there will be a "much larger rash of cases."

26.    Veterinarians at the Animal Medical Center, which according to ABC News is considered the Mayo Clinic of veterinary medicine, traced the kidney failure back to the 60 million cans and pouches of recalled food from Menu Foods.

27.    "I was shocked and surprised—acute kidney failure is not a common
problem," veterinarian Cathy Langston told ABC News. "I've already heard about 200
cases, and so I bet there are probably going to be thousands."

## DAMAGES TO PLAINTIFF AND THE CLASS

28.    Media reports concerning the recall state that Defendant, and the
distributors, have offered to reimburse customers for any unused pet food returned.
However, this proposed remedy is insufficient.

29.    As a result of buying Defendant's pet food, Plaintiffs and the Class have
suffered significant damages beyond the price of the food.  Many members of the Class
brought animals who consumed Defendant's food to veterinarians for precautionary
measures.  Many Class members' pets exhibited symptoms of acute renal failure and
required veterinary treatment.  Finally, many pets died as a result of consuming
Defendant's products.  Thus, the owners of these animals were required to pay veterinary
costs, costs of euthanization in many cases, burial costs, and also lost the purchase price
they paid for their animals.

30.    Moreover, Plaintiff and other members of the Class have attempted to
contact Defendant to complain, but have either received an inadequate response, no
response, or have been unable to contact Defendant due to busy phone lines.

31.    The members of the Class should be compensated accordingly.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of themselves and all others similarly situated who purchased food manufactured by Defendant during the period December 3, 2006 March 16, 2007 (the "Class" and the "Class Period" respectively).

33.    The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are hundreds of thousands of purchasers of foods manufactured by Defendant in the Class.

34.    There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a.    Whether Defendant was unjustly enriched by its sales of defective food;

b.    Whether, as a result of Defendant's misconduct, Plaintiff and members of the Class are entitled to damages, equitable relief and/or other relief, and the amount and nature of such relief;

c.    Whether the food manufactured by Defendant is defective;

d.    Whether Defendant was aware of the defect inherent in its food and for how long;   and

35.    The claims of Plaintiff are typical of the claims of the Class because Plaintiff, like all members of the Class, unknowingly purchased defective foods manufactured by Menu Foods. Plaintiff has no interests antagonistic to those of the Class, and Menu Foods has no defenses unique to Plaintiff or any of them.

36.    Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in class and complex litigation.

37.    A class action is superior to other available methods for the fair and

efficient adjudication of this controversy for the following reasons:

a.  It is economically impractical for members of the Class to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

b.  The Class is readily ascertainable and definable; and

c.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

38.  Plaintiffs do not anticipate any difficulty in the management of this litigation.

## COUNT I

**(By Plaintiff Linda Tinker on behalf of all similarly situated residents of Arkansas; California; Colorado; Connecticut; Hawaii; Indiana; Iowa; Michigan; Mississippi; Missouri; Nebraska; New Hampshire; New Jersey; New York; Oklahoma; Vermont; and West Virginia For Unjust Enrichment).**

39.  Plaintiff realleges and reasserts each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein. During the Class Period, Defendant manufactured and sold contaminated or defective pet food, which caused the dogs and cats of Plaintiffs and the Class to suffer from acute renal failure and suffer serious injury or death.

40.  As a result of the defect, members of the Class have experienced injury to

their pet dogs and cats and/or have purchased a product that they would not have purchased had they known of the defect and the danger associated with the product and have thereby been damaged.

4 .     Defendant had knowledge of the defect in its pet food prior to the time Plaintiffs purchased their pet food from, at the latest, February 20, 2007 as a result of the numerous complaints that it received from its customers.

42.     Despite Defendant's knowledge of the defect in its pet food, Defendant refused to inform consumers of the defect -- a material fact-- and/or issue a recall of the pet food until March 16, 2007—nearly one month after Defendant learned of the defect and while dogs and cats continued to be sickened by Defendant's pet food.

43.     During the Class Period, Plaintiffs and members of the Class conferred upon Defendant, without knowledge of the defect, payment for their pet food, benefits which were non-gratuitous.

44.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite Defendant's knowledge of the defect in the pet food. Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Moreover, as part of the recall, consumers were offered refunds for only the product which they could return. Because much of the food was actually eaten by Class members' pets, there can be no reimbursement.

45.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution in a manner established by the Court.

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in their favor and against Defendant as follows:

A.   An order certifying the Class and directing that this case proceed as a class action;

B.   Judgment in favor of Plaintiffs and the members of the Class in an amount of actual damages or restitution to be determined at trial;

C.   An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

D.   Such other and further relief as this Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Dated: March 23, 2007                 By: _____

Alan E. Sash (AS 8804)
Steven J. Hyman
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York  10016
Tel: 212-448-1100
Fax: 212-448-0066

Arthur N. Abbey
Stephen T. Rodd
Orin Kurtz
ABBEY SPANIER RODD
ABRAMS & PARADIS, LLP
212 East 39th Street
New York, NY 10016
Tel: 212-889-3700
Fax: 212-684-5191

Attorneys for Plaintiff Linda Tinker

# EXHIBIT A

# MENU FOODS INCOME FUND



---



○ Home
○ **Recall Information**

Press Release

Cat Product Information

Dog Product Information

## Recalled Dog Product Information
### Recall Information 1-866-895-2708

Menu Foods Income
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws
32. Pet Essentials
33. Pet Pride - Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US

Case 3:07-cv-00159-LRH-VPC    Document 4    Filed 04/09/2007    Page 14 of 40

38. Publix
39. Roche Brothers
40. Save-A-Lot
41. Schnucks
42. Shep Dog
43. Springsfield Prize
44. Sprout
45. Stater Brothers
46. Stop & Shop Companion
47. Tops Companion
48. Wegmans Bruiser
49. Weis Total Pet
50. Western Family US
51. White Rose
52. Winn Dixie
53. Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

# MENU FOODS INCOME FUND





o Home
o **Recall Information**

Press Release
Cat Product Information
Dog Product Information

## Recalled Cat Product Information
### Recall Information **1-866-895-2708**

Menu Foods Income
8 Falconer Drive
Streetsville, ON
Canada L5N 1B1

1. Americas Choice, Preferred Pets
2. Authority
3. Best Choice
4. Companion
5. Compliments
6. Demoulas Market Basket
7. Eukanuba
8. Fine Feline Cat
9. Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat
32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion

Menu Foods Income Fund - Annual General Meeting

38. Wegmans
39. Weis Total Pet
40. Western Family US
41. White Rose
42. Winn Dixie

® Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

# EXHIBIT K

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Bruce D. Greenberg, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0211

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
Wendy J. Harrison, Esq.
Guy A. Hanson, Esq.
Dana L. Hooper, Esq.
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012-3311
Phone: (602) 274-1100
Fax: (602) 274-1199

Attorneys for Plaintiffs

RECEIVED

MAR 2 7 2007
8:30 P M
AT 8:30
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Paul Richard and Jennifer Richard, husband and wife, Charles Kohler and Alicia Kohler, husband and wife, | : |
| | : Civil Action No.: |
| Plaintiffs, | : |
| v. | : |
| Menu Foods Income Fund, a Canadian open-ended trust, Menu Foods Limited, a Canadian corporation, Menu Foods Holdings, Inc., a Delaware corporation, Menu Foods, Inc., a New Jersey corporation, Menu Foods Midwest corporation, a Delaware corporation, Menu Foods South Dakota, Inc., a Delaware corporation, ABC partnerships, XYZ corporations, | : **CLASS ACTION COMPLAINT** |
| Defendants. | : |

Plaintiffs Paul Richard and Jennifer Richard and Alicia Kohler, for their

class action complaint, allege as follows:

## NATURE OF THE ACTION

1.      This is a class action seeking recovery for damages caused by Defendants' poisonous pet food. Defendants' food injured or killed pets in Michigan, Indiana and throughout the United States. According to media reports, testing revealed that Defendants' adulterated pet food may have killed as many as one out of every six who ate it.

2.      Plaintiffs Paul Richard and Jennifer Richard owned a pet cat, Teddy, who was killed by Defendants' contaminated food. Plaintiff Alicia Kohler owned a cat, Coco, who was also killed by Defendants' food. These Plaintiffs bring this action individually and on behalf of similarly situated persons throughout the United States whose pets were harmed or killed by Defendants' products Pursuant Rule 23, Federal Rules of Civil Procedure, Plaintiffs assert claims on behalf of a class consisting of all dog or cat owners in the United States who purchased "cuts and gravy" style wet food that was manufactured and recalled by Defendants, and whose pets became sick or died after eating Defendants' pet food.

3.      Like others in the proposed class, Plaintiffs bought pet food manufactured and distributed by Defendants, believing it was safe for their pets to eat.

4.      The food was not safe. It was lethal. Within days of eating it, Plaintiffs' pets experienced massive renal failure and died.

5.      Plaintiffs are members of a rapidly growing group of pet owners who have been damaged by Defendants' unsafe pet food. Based on news reports,

pet cats and dogs across the United States have been sickened or killed after eating Defendants' pet food products.

### THE PARTIES

6.    At all relevant times, Plaintiffs Paul Richard and Jennifer Richard resided in Hillman, Michigan.  Plaintiff Alicia Kohler resided in Michigan City, Indiana.

7    The Defendants responsible for producing the adulterated pet food are business entities that reside in Canada and the United States.  At all relevant times, Defendant Menu Foods Income Fund was and is an unincorporated open-ended trust established under the laws of Ontario, Canada.  Through an arrangement of partnerships and corporations, Menu Foods Income Fund owns and operates Defendant Menu Foods Limited, a corporation incorporated under the laws of Ontario, Canada.

8.    Menu Foods Income Fund owns and operates corporations in the United States.  Defendant Menu Foods Holdings, Inc. is a Delaware corporation, and a wholly-owned subsidiary of Menu Foods Limited (in Canada).  Defendants Menu Foods, Inc., Menu Foods Midwest Corporation and Menu Foods South Dakota, Inc. are wholly-owned subsidiaries of Menu Foods Holdings, Inc.  Menu Foods, Inc. is a New Jersey corporation with its principal place of business in Pennsauken, New Jersey.  Menu Foods Midwest Corporation is a Delaware corporation with its principal place of business in Emporia, Kansas.  Menu Foods South Dakota, Inc. is a Delaware corporation with its principal place of business

in Sioux City, South Dakota. In this Complaint, the Menu Foods Defendants in Canada and the United States are referred to collectively as "Menu" or "Defendants."

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005).

10.    Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b)(2) as to the American-based Defendants because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. Defendants manufactured and distributed recalled "cuts and gravy" style pet food in this district. Venue is proper as to the Canadian-based Defendants under 28 U.S.C. § 1391(d).

## GENERAL ALLEGATIONS

A.    **Menu's Operations**

11.    Menu manufactures wet pet food, packages it in cans and pouches, and sells it either to retail customers as private-label products or to brand-owners as contract manufactured pet food. Menu claims it is the leading manufacturer of wet pet food in North America.

12.    "Private label" products are pet foods that are commissioned, marketed and owned by a retailer as opposed to a manufacturer. Menu claims it supplies all or a "meaningful portion" of the private-label wet pet food products

sold by such retailers as Kroger Co., Safeway, Wal-Mart Stores, PetSmart, Inc. and Pet Valu, Inc.

13.     "Contract manufactured" products are pet foods manufactured for a pet food brand-owner, such as Iams or Purina. Menu claims it is a contract manufacturer for five of the top six branded pet food companies in North America.

14.     As private label or contract manufactured products, Menu manufactures and distributes wet cat food under such labels as America's Choice, Authority, Best Choice, Companion, Compliments, Eukanuba, Fine Feline Cat, Iams, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Science Diet, Total Pet and Winn Dixie.

15.     As private label or contract manufactured products, Menu manufactures and distributes wet dog food under such labels as America's Choice, Authority, Award, Big Red, Companion, Eukanuba, Food Lion, Great Choice, Iams, Nutriplan, Ol' Roy, Pet Essentials, President's Choice, Priority, Publix, Total Pet, Western Family and Winn Dixie.

16.     Menu manufactures and distributes its wet pet food products from facilities in Pennsauken, New Jersey, Emporia, Kansas, North Sioux City, South Dakota, and Streetsville, Ontario.

17.     Menu boasts that its manufacturing facilities are able to manufacture 1000 cans of wet pet food per minute or 1100 pouches of wet pet food per minute. Collectively, Menu's plants are capable of producing more than one billion containers of wet pet food per year.

18.    Menu intended that its pet food products be distributed and offered for sale throughout the United States, including Indiana, Michigan and New Jersey. Menu promoted and advertised its pet food products throughout the United States, including Indiana, Michigan and New Jersey.

19.    Cat and dog owners love their pets. Throughout the United States, owners buy products manufactured by Menu and feed them to their pets because they believe the food is nutritious and safe to eat.

**B.    Menu's Manufacture and Distribution of Contaminated Pet Food**

20.    On March 16, 2007, Menu announced it was recalling approximately 60 million cans and pouches of contaminated "cuts and gravy" style cat and dog food. Menu recalled wet pet food marketed under at least 90 labels in the United States between December 3, 2006 and March 6, 2007. Menu euphemistically characterized the recall as a "precautionary" measure and said it was taking these products off the market "out of an abundance of caution."

21.    Menu later expanded the recall to all "cuts and gravy" style pet food products, regardless of the manufacture date.

22.    Menu told the Food and Drug Administration ("FDA") it began receiving complaints on February 20, 2007 that pet dogs and cats who ate its wet "cuts and gravy" pet food were becoming sick and dying. Menu, however, has not disclosed the contents of the complaints or the dates they were received. One Canadian media source has reported that Menu began receiving reports of concerns about its "cuts and gravy" pet food as early as December 2006.

23.    On February 27, 2007, Menu began testing its food by feeding it to cats, dogs and other unidentified animal species. Several of the test animals died. Menu has admitted that test animals who were fed the suspicious food began dying as early as March 2, 2007.

24.    Nevertheless, Menu waited until March 16, 2007 before recalling any of the adulterated food. Menu made the recall announcement on a Friday afternoon at 3:51 p.m. ET, ten minutes before close of trading on the New York Stock Exchange and Toronto Stock Exchange.

25.    The impact of the recall announcement was immediate. Through the following weekend, Menu's switchboard was swamped with some 47,000 calls as pet owners tried to get more information. Owners called their veterinary clinics and took their pets in for examinations. The New York Times reported: "Around the country, worried owners of dogs and cats kept veterinarians' offices and pet stores busy fielding calls yesterday, concerned that the food might have sickened their pets." The FDA described the effect on pet owners who learned they had fed their pets poisoned food: "the growing crisis is an emotional one."

26.    Menu could not determine why its food was sickening and killing cats and dogs. However, testing by New York state's food laboratory discovered aminopterin in Menu's "cuts and gravy" style pet food. Aminopterin is a compound used in other countries as rat poison.

27.    Although Menu knew its "cuts and gravy" style food was unsafe for pets, it never closed the facility or facilities that produced the contaminated products.

## ALLEGATIONS REGARDING PLAINTIFFS

### (A)    Plaintiffs Paul and Jennifer Richard

28.    On March 2, 2007, Plaintiffs Paul and Jennifer Richard bought several pouches of Special Kitty cuts and gravy style cat food from a Wal-Mart store near their home in Hillman, Michigan. The food was for their cat, Teddy.

29.    On March 3, 2007, Teddy, began showing signs of illness after eating some of the Special Kitty food. The symptoms continued over the next two days and Plaintiffs took Teddy to their veterinarian on March 5, 2007.

30.    The veterinarian told Plaintiffs that Teddy's kidneys had grown to three times their normal size and that he was experiencing renal failure. On March 6, 2007, Teddy was put to sleep.

### (B)    Plaintiff Alicia Kohler

31.    On March 5 or 6, 2007, Plaintiff Alicia Kohler bought cans of "cuts and gravy" style Meijer Main Choice cat food at a Meijer store near her home in Michigan City, Indiana. The food was for Ms. Kohler's pet cat, Coco.

32.    Within a day of eating the Meijer Main Choice, Coco became sick. She became lethargic, would not eat, and began vomiting. When the symptoms worsened, Ms. Kohler took Coco to her veterinarian on March 9, 2007. After a blood workup, the veterinarian told Ms. Kohler that Coco was experiencing renal failure. Coco was put to sleep later that day.

33.    On March 16, 2007, Ms. Kohler learned of Menu's recall on the evening news. Through the weekend, she tried to contact Menu, but repeatedly received a busy signal.

34.    Plaintiffs bought contaminated pet food and fed it to their pets before March 16, 2007. Plaintiffs' pets were dead by the time Menu began recalling its tainted food.

## CLASS ACTION ALLEGATIONS

35.    Plaintiffs seek certification of their warranty, strict liability and negligence claims under Rules 23(a) and (b)(3) and/or (b)(1)(B), Federal Rules of Civil Procedure. Plaintiffs also seek certification of a punitive damages claim under Rule 23.

36.    The class satisfies the requirements of Rule 23(a). The members of the proposed class are so numerous that joinder is impracticable. The March 16, 2007 recall numbered approximately 60 million cans or pouches. Before Menu's belated recall, its tainted pet food was consumed by pets across America. The death toll currently numbers in the hundreds, and veterinarians agree that the number of pets sickened or killed by the bad food will increase precipitously.

37.    Plaintiffs' experiences and resulting claims are typical of class members'. Both Plaintiffs and class members bought adulterated pet food manufactured and distributed by Menu. Both Plaintiffs and class members suffered the same kind of damages when their pets were sickened or killed by Menu's food.

38.    The claims involve questions of law and fact common to Plaintiffs and all members of the class. These questions include:

(a)    whether Menu marketed and distributed contaminated pet food;

(b)     whether express warranties apply to the sale of pet food to consumers, and whether Menu's sale of contaminated pet food breached express warranties;

(c)     whether the contaminated pet food sold by Menu was not reasonably fit, suitable or safe for its intended purpose;

(d)     whether the allegedly poisonous pet food was altered in any way after leaving Menu's control;

(e)     whether the contamination in the pet food was or could be known to the ordinary consumer or user;

(f)     whether Menu's poisonous pet food is egregiously unsafe or ultra-hazardous to pets;

(g)     whether the tainted pet food has any usefulness as pet food;

(h)     Whether Menu made representations and promises that its pet food was safe for pets to consume;

(i)     whether Menu's pet food conformed to representations and promises regarding the safety of its food; and

(j)     whether Menu's failure to warn about or recall pet food it knew posed a substantial risk of serious harm to pets supports an award of punitive damages.

39.     Plaintiffs have no interests antagonistic to those of the class, and have retained attorneys who are knowledgeable in class action litigation. The interests of Class Members are therefore fairly and adequately protected.

40.    This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

41.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Although the loss of or injury to class members pets is emotionally devastating, the amount of objectively quantifiable damages suffered by pet owners is relatively small. Plaintiffs and class members therefore would find it difficult to litigate individual claims against a well-heeled corporate giant. The expense and burden of individual litigation makes it impossible for members of the class to individually redress the wrongs done to them.

## CAUSES OF ACTION

### COUNT I
### (PRODUCT LIABILITY UNDER N.J.S.A. 2A:58C-1 *et. seq.*)

42.    Plaintiffs incorporate the allegations contained above.

43.    Menu is a manufacturer or seller of a product that caused harm to Plaintiffs and class members.

44.    Menu manufactured, distributed, marketed and sold pet food products containing contaminants that were toxic to pets. Menu's contaminated pet food was not reasonably fit, suitable or safe for its intended purpose, as feeding the food to dogs and cats subjected them to imminent harm or death.

45.    Menu's adulterated pet food was egregiously unsafe and had no usefulness as pet food.

46.    The pet food products were contaminated, defective and unreasonably dangerous when they left Menu's control.

47.    Plaintiffs and class members did not and could not know the Menu Foods pet food they purchased and fed to their pets was contaminated and unsafe.

48.    The pet food products were not altered or misused by Plaintiffs, class members or any third party.

49.    The unfit and unsafe adulterated pet food products caused Plaintiffs' and class members' pets who ate it to become sick or die.

50.    Menu's unfit and unsafe pet food products have caused Plaintiffs and class members damages, including loss of their pets, past and future veterinary expenses, and other damages yet to be ascertained.

51.    Menu knew that pet owners throughout the United States were feeding its pet food products to their pets every day. By the beginning of March 2007, and likely earlier, Menu knew its pet food was contaminated and was toxic and potentially fatal to cats and dogs who ate it. Menu knew its inaction would result in cats and dogs across the United States becoming sick or dying as their kidneys failed, would cause pet owners to spend money on veterinary care, and would cause emotional devastation as pet owners helplessly watched their pets sickened or killed. Under the circumstances, Menu's conduct was egregious and outrageous, and warrants an award of punitive damages for Plaintiffs and the class.

## COUNT II
## (BREACH OF EXPRESS WARRANTY)

52.    Plaintiffs incorporate the allegations contained above.

53.    The contaminated pet food products manufactured and marketed by Menu that harmed Plaintiffs' and class members' pets are "goods." Menu is a "seller" of goods and a "merchant." Plaintiffs and class members are "consumers" and "buyers."

54.    Menu made representations and promises that its pet food was safe for pets to consume. These representations are express warranties or obligations because Plaintiffs' and class members' purchase of Menu's pet food products were based in part on them.

55.    The poisoned pet food did not conform to Menu's representations and promises. Menu has therefore breached express warranties and obligations to Plaintiffs and class members.

56.    Plaintiffs and class members have suffered damages resulting from the breach of express warranties.

## COUNT III
## (NEW JERSEY CONSUMER FRAUD)

57.    Plaintiffs incorporate the allegations contained above.

58.    The pet food manufactured by Menu constitutes merchandise under N.J. Stat. Ann. §§ 56:8-1 *et seq.*

59.    Menu made representations and promises that its pet food was safe for pets to consume.

60.    Menu's pet food did not conform with representations and promises regarding the safety of its food. Menu failed to immediately recall or remove unsafe food products it knew or had reason to know were unsafe.

61.    Menu's actions constitute deception, use of deceptive acts or practice, fraud, misrepresentation and concealing, suppressing and omitting material facts in connection with the sale and advertisement of merchandise.

62.    Menu intended Plaintiffs to rely of its deception, deceptive acts and practices, fraud, misrepresentations and concealment, suppression and/or omission of material facts when selling Plaintiffs the pet food.

63.    As a result of Menu's deception, deceptive acts and practices, fraud, misrepresentations and concealment, suppression and/or omission of material facts when selling Plaintiffs the pet food, Plaintiffs suffered ascertainable damages

64.    Plaintiffs are entitled to treble damages under N.J. Stat. Ann. §§ 56:8-1 *et seq*.

65.    Plaintiffs are entitled to punitive damages under N.J. Stat. Ann. §§ 56:8-1 *et seq*. as Menu's actions were reckless, wanton, egregious and outrageous.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the class, request the following relief:

(a)    An order certifying the class as defined above;

(b)    An award of damages including, but not limited to, the cost of contaminated food, veterinarian bills and expenses associated with the examination, testing, diagnosis, treatment and euthanization of

animals poisoned by Menu's tainted food, pet disposal costs, and

the value of the diseased pet;

(c)     Treble damages;

(d)     Punitive damages awarded on a class-wide basis;

(e)     Pre-judgment and post-judgment interest;

(f)     Plaintiffs' attorneys' fees and costs incurred in prosecuting this

action; and

(g)     Such other relief as the Court deems necessary, just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims and issues.

Dated: March 27, 2007

By: _____

Allyn Z. Lite
Bruce D. Greenberg, Esq.
**LITE DEPALMA GREENBERG
& RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000
Facsimile: (973) 623-0211

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Wendy J. Harrison, Esq.
Guy A. Hanson, Esq.
Dana L. Hooper, Esq.
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012

Attorneys for Plaintiffs

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is not the subject of any pending action.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated: March 27, 2007

By: _____
    Allyn Z. Lite

# EXHIBIT L

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE BONIER;<br>GUY BRITTON; and<br>TAMMY MATTHEWS, individually and on<br>behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>MENU FOODS, INC, MENU FOODS<br>INCOME FUNDS, and MENU FOODS<br>MIDWEST CORPORATION,<br><br>     Defendant. | Court File No. _____<br><br>**INDIVIDUAL AND CLASS ACTION<br>COMPLAINT, INCLUDING<br>COMPENSATION FOR VETERINARY<br>MONITORING FOR CLASS MEMBERS'<br>PETS, COMPENSATION FOR<br>EMOTIONAL DISTRESS,<br>REIMBURSEMENT OF VETERINARY<br>EXPENSES INCURRED BY CLASS<br>MEMBERS, AND OTHER DAMAGES<br>AND EQUITABLE RELIEF**<br><br>**<u>Jury Trial Demanded</u>** |

## <u>INTRODUCTION</u>

1.     As the pet food industry knows all too well — Americans love their pets. Indeed, this multi-million dollar industry has grown by leaps and bounds over the past decade as more and more Americans own more and more pets. Over the past few months, however, this essentially unregulated industry has shown what can happen when a company recklessly ignores possible early warning signs regarding one of its most popular lines of pet food. Instead of focusing on doing the right thing, the Defendants in this case have engaged in a classic case of "public relations first, clients last" mentality with respect to its tainted, deadly pet food. As outlined in this complaint, as early as December 2006, the Defendants were getting reports of

1

animals getting very ill after eating Menu Foods' products. Yet, the Defendants waited almost three months before announcing a recall.

2.      The Plaintiffs in this case are united by love of their pets and by their desire to see that justice is done for all pet lovers in the United States. The Plaintiffs in this case — a representative sample of thousands of others in a similar situation — ask that the Defendants be held fully accountable and that measures are taken to ensure that the unnecessary deaths of the hundreds (and possibly thousands) of loved pets never happens again. In filing this complaint, these Plaintiffs ask this Court to, *inter alia*, (i) establish a veterinary medical monitoring program funded by the Defendants, (ii) require Defendants to reimburse all the out-of-pocket expenses incurred by class members, (iii) require the Defendants to immediately provide detailed information to the public about the tainted pet food, and (iv) appropriately compensate all Class members for their pain and suffering incurred as a result of the deaths of their beloved pets. In addition, the Plaintiffs demand that the Defendants immediately take steps to ensure that the distribution of Tainted Pet Food will never happen again and to establish, dedicate and fund an internet-based memorial to honor the hundreds and hundreds of pets who have died needlessly due to the ingestion of the Defendants' tainted food.

3.      Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and as representatives of a Class. Plaintiffs and members of the Class have also incurred significant costs for veterinary and/or other economic losses and will continue to incur such expenses and losses in the future. In addition, Class members have had to pay for food that is no longer useable, and Defendants must reimburse them for the cost of these purchases.

2

## PARTIES

4.     Individual and Representative Plaintiff Janice Bonier is a member of the class and lost her much loved cat. Janice Bonier's cat was named Kurt. At 25 lbs, he was a "solid kitty." Although he had no previous medical issues, he died within days of being fed "Special Kitty" cat food. In fact, on March 4, 2007 he was fine. On March 5th, Ms Bonier's daughter found him dead.

5.     Individual and Representative Plaintiff Guy Britton is a member of the class and lost his much loved dog. "Allie" was the name of Guy Britton's Golden Retriever. After being fed tainted pet food in January 2007, he began vomiting and showing signs of lethargy. Mr. Britton took Allie to the vet, and the vet recommended that Allie be put down immediately.

6.     Individual and Representative Plaintiff Tammy Matthews is a member of the class and lost her much loved cat. Although Tammy Matthews' cat was diagnosed with a clean bill of health in a February, 2007 vet visit, he was dead within a month from eating the tainted pet food. Ms. Matthews is angry, confused and frustrated.

7.     Defendant Menu Foods, Inc. is the main manufacturing plant of the Tainted Pet Food. The plant is located in New Jersey. Defendant Menu Foods Income Funds is the owner and operator of Menu Foods, Inc. Defendant Menu Foods Midwest Corporation is another manufacturing plant owned by Defendant Menu Food Income Funds (collectively, these defendants are referred to as the "Defendants").

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a nationwide class action lawsuit in which over $5,000,000 is at issue, there are

3

more than one hundred putative class members, and members of the class of plaintiffs are citizens of states difference from defendants.

9.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendant is subject to personal jurisdiction in this District. Defendants' manufacturing plant is located in Pennsauken, New Jersey.

## FACTS

10.     In late December 2006, Defendants were provided reports of problems — including serious injuries to cats and dogs — with their "cuts and gravy" style pet food (hereinafter "Tainted Pet Food"). As more and more reports came to light, the Defendants decided to "internally" conduct confidential testing. During this testing period, the Company notified the FDA, but apparently decided to keep this information from the public (and distributors).

11.     In the meantime, during this "silent" period more and more reports of injuries and deaths linked to the Tainted Pet Food were reported to the Defendants. The Defendants did nothing to warn distributors or the public of the problems. Instead, the Defendants allowed the Tainted Pet Food to sit on store shelves.

12.     On March 2, 2007, the first of nine animals in the Defendants' own "secret" feeding trial died of acute renal failure. Four days later, the Defendants switched their supplier of wheat gluten due to the deaths.

13.     On March 16, 2007, after a delay of months, the Defendants finally announced a "voluntary" recall of over 60 million cans and pouches of pet foods produced by the Defendants.

4

14.    Yet, even though public reports indicated dozens and dozens of animal deaths linked to their products, the Defendants minimized the problem and would only "confirm" the deaths of "fifteen" cats and "one" dog. The Defendants "PR" spin focused on purported lack of "direct" evidence of the problem, allowing them to continue to delay the announcement of a recall.

15.    On March 23, 2007, reports indicated that the Tainted Pet Food contained rat poison ("aminopterin").

16.    The recalled products include:

Recalled cat foods:

America's Choice, Preferred Pets; Authority; Best Choice; Companion; Compliments; Demoulas Market Basket; Eukanuba; Fine Feline Cat; Food Lion; Foodtown; Giant Companion; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Li'l Red; Loving Meals; Meijer's Main Choice; Nutriplan; Nutro Max Gourmet Classics; Nutro Natural Choice; Paws; Pet Pride; Presidents Choice; Price Chopper; Priority US; Save-A-Lot Special Blend; Schnucks; Science Diet Feline Savory Cuts Cans; Sophistacat; Special Kitty Canada; Special Kitty US; Springfield Prize; Sprout; Stop & Shop Companion; Tops Companion; Wegmans; Weis Total Pet; Western Family US; White Rose; and Winn Dixie.

Recalled dog foods:

America's Choice, Preferred Pets; Authority; Award; Best Choice; Big Bet; Big Red; Bloom; Cadillac; Companion; Demoulas Market Basket; Eukanuba; Food Lion; Giant Companion; Great Choice; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Loving Meals; Meijer's Main Choice; Mighty Dog Pouch; Mixables; Nutriplan; Nutro Max; Nutro Natural Choice; Nutro Ultra; Nutro; Ol'Roy Canada; Ol'Roy US; Paws; Pet Essentials; Pet Pride - Good n Meaty; Presidents Choice; Price Chopper; Priority Canada; Priority US; Publix; Roche Brothers; Save-A-Lot Choice Morsels; Schnucks; Springfield Prize; Sprout; Stater Brothers; Stop & Shop Companion; Tops Companion; Wegmans Bruiser; Weis Total Pet; Western Family US; White Rose; Winn Dixie; and Your Pet.

17.    Due to the delay in announcing the recall, hundreds and hundreds of beloved pets needlessly died or have become very ill. Although the Defendants claim to be "sorry" — for

5

Plaintiffs and Class members, this purported apology is too little too late. Had the Defendants fully and timely reported the problem to the public, these pets would be alive and well today.

18.    Today, despite the Defendants downplay of the problem, more than two thousand self-reported deaths and injuries have been reported on the internet. With a potential 17% of the 60 million tainted products containing poison, the real numbers are in the thousands and thousands.

19.    This lawsuit seeks compensatory damages and equitable relief.

## CLASS ACTION ALLEGATIONS

20.    Plaintiffs bring this action on their own behalf and as representatives of a class consisting of all persons who purchased the pet food under the Defendant's label.

21.    Plaintiffs seek certification of the claims asserted herein pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3) for equitable, injunctive, and declaratory relief to create a Court-supervised program funded by the Defendant to provide class members with medical screening, medical research and education, and a medical/legal registry to assure that Class members pets receive prompt and proper veterinary treatment to mitigate the risk of a life threatening injuries to their pets.

22.    The named Plaintiffs herein are members of the Class they seek to represent.

23.    The Class is so numerous that joinder of all members is impracticable.

24.    The Class is comprised of "all persons in the United States who purchased the Tainted Pet Food after December 1, 2006."

25.    There are questions of law and fact common to the Class including, but not limited to:

> a.    Whether Defendants negligently and/or fraudulently distributed, promoted, tested, sold, and/or marketed tainted pet food;

6