# Exhibit A

03/26/2007 13:42   916 568 7890
03/26/2007 13:42 FAX 916 568 7890   WEXLER TORISEVA WALLACE                 ☒002/017

1  **WEXLER TORISEVA WALLACE LLP**
2  MARK J. TAMBLYN (State Bar No. 179272)
   Email: mjt@wtwlaw.us
3  1610 Arden Way, Suite 290
   Sacramento, California 95815
4  Telephone: (916) 568-1100
   Facsimile: (916) 568-7890

5  **KERSHAW, CUTTER, & RATINOFF, LLP**
   STUART C. TALLEY (State Bar No. 180374)
6  E-mail: stalley@kcrlegal.com
   980 9th Street, 19th Floor
7  Sacramento, California 95814
   Telephone: (916) 448-9800
8  Facsimile: (916) 669-4499

9  [Additional Counsel Listed on Signature Page]

10 Attorneys for *Plaintiff*

FILED
2007 MAR 26 AM 11:16
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF
LOS ANGELES
BY ___

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY SEXTON, on behalf of herself and all others similarly situated, | Case No. **CV07-01958GHK (AJWx)** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| MENU FOODS INCOME FUND, MENU FOODS, INC., a New Jersey corporation, and MENU FOODS MIDWEST CORPORATION, a Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

-1-
CLASS ACTION COMPLAINT

03/26/2007 13:42 FAX 916 568 7890   WEXLER TORISEVA WALLACE   ☒003/017

Plaintiff Shirley Sexton ("Plaintiff"), individually and on behalf of all others similarly situated, alleges by and through her attorneys, upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and a class of consumers and entities who purchased brands of pet food manufactured by Defendants that caused pets to suffer severe illness or death. Pet owners, believing Defendants' products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and to the veterinary monitoring and treatment that became necessary after their pets consumed Defendants' pet food. Such expenses were even more extreme for those pet owners whose pets became terminally ill after consuming Defendants' pet food products. Such costs arose and were exacerbated by the undue amount of time taken by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants knew that pet illnesses and deaths could be related to their pet foods, Defendants waited for nearly a month before telling the public and the Food and Drug Administration (FDA) that it was recalling its products. Defendants' lethal products, and the companies' excessive delay in warning consumers and regulatory agencies as to its dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2).

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4. The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

03/26/2007 13:42   916 568 7890
03/26/2007 13:43 FAX  916 583 7890        WEXLER TORISEVA WALLACE                    ☒004/017

## PARTIES

5. Plaintiff Shirley Sexton is a resident of Los Angeles County, California.

6. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

8. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods, Inc.

9. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

11. Defendants manufacture and sell pet food internationally and are the biggest supplier of pet food in North America.

12. Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry -- e.g., Iams, Eukanuba, Science Diet, among others.

13. Defendants sell their brands internationally and in some of the largest

03/26/2007  13:43   916 568 7890
03/26/2007 13:43 FAX  918 568▮▮90       WEXLER TORISEVA WALLA▮▮              ☐005/017

1. major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

14. On March 16, 2007, Defendants, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" wet pet food produced and distributed by Defendants, including over ninety different brands of dog and cat food. Some of the brands recalled include, Iams, Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet food recall in United States history.

15. However, Defendants waited an excessive period of time before deciding to recall its harmful and lethal products. Defendants first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall its products. See, e.g., CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, at http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March 22, 2007). Rather than announcing its products could be harmful to pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct its own testing. Defendants conducted tests involving over 50 animals to observe reactions to its pet foods. Approximately one in six of the animals tested died. Yet, Defendants again waited until as many as seven test subjects died after eating its pet food before finally submitting its findings to the FDA and deciding that a recall and announcement to the public would be necessary.

16. Due in no small part to this unnecessary and protracted delay, as of March 21, 2007 there have been at least seventy-two reported pet deaths from kidney failure nationwide and additional deaths continue to be reported by the hour. One source indicated that 1,715 dogs and cats were either sick or dead as a result of

-4-
CLASS ACTION COMPLAINT

03/26/2007 13:43   916 568 7890
03/26/2007 13:43 FAX 916 568 7890     WEXLER TORISEVA WALLACE                @006/017

the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed March 22, 2007).

17. Pet owners purchased Defendants' products believing them to be safe for pet consumption and beneficial to their pets. However, the "cuts and gravy" style pet food that pet owners across the nation have fed their pets has proved to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

18. Pet owners have incurred substantial expenses relating both to the purchase of Defendants' pet food and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated food products. Indeed, several pet owners have accrued veterinary bills that have climbed into the several thousands of dollars. Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for some, burying or cremating their pet.

19. Currently, Defendants still have not identified the cause of the food toxicity. However, aminopterin, a substance found in rat poisons, was recently discovered in the recalled foods.

20. In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Defendants. Defendants have failed to manage the high volume of incoming complaints. Since instituting the recall, pet owners have been largely unable to reach Defendants' customer service representatives, often encountering busy signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, at http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS 01/703200345/1066 (last viewed March 22, 2007). To be sure, Defendants have been criticized for not being cooperative with customers, for not getting helpful

03/26/2007 13:43  916 568 7890
03/26/2007 13:43 FAX 916 568 7890    WEXLER TORISEVA WALLACE    ☒007/017

information out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available at* http://www.nj.com/starledger/stories/index.ssf?/base/business-6/1174455547849890.xml&coll=1 (last viewed March 23, 2007).

21. Since the recall, Defendants have received scores of complaints and questions from consumers who have purchased its contaminated pet food products and from those whose pets have become ill or died after consuming those products.

22. The complaints found throughout the Internet and in many of the news stories mentioned above each contain the same common theme of consumers who unwittingly purchased Defendants' food products and who were forced to take their pets to veterinarians for medical treatment after their pets became extremely, and sometimes terminally ill.

23. Plaintiff Shirley Sexton regularly purchased *Special Kitty* brand wet pet food from Wal-Mart Stores, Inc. before the recall was announced.

24. Four cats lived in Ms. Sexton's household. Two of Ms. Sexton's three cats, Red and Kelso, ate the *Special Kitty* pet food every day. Spike, a cat belonging to Ms. Sexton's daughter, also ate *Special Kitty* pet food on a daily basis.

25. On or March 16 and March 17, 2007, Shirley noticed that both Red and Kelso were ill. She took Red and her two other cats in to the veterinarian. Two of the three cats, including Kelso, were initially found to be healthy. However, the veterinarian discovered Red had kidney failure and decided to keep Red overnight. On March 20, 2007, the veterinarian determined that Red's condition had significantly worsened and Ms. Sexton, in order to spare her pet from suffering any further, made the decision to have Red euthanized that same day.

26. After her experience with Red, Ms. Sexton also brought her daughter's cat, Spike, to the veterinarian for testing. The veterinarian determined that Spike – who also ate Wal-Mart's *Special Kitty* brand food – was suffering from kidney

03/26/2007  13:44    916 568 7890
03/26/2007 13:44 FAX  916 568 ___90        WEXLER TORISEVA WALLA___                    ☒008/017

1  failure. As of the date of this complaint, Spike remains in the veterinary hospital.

2  27. To date, Ms. Sexton has incurred at least $1,100 in veterinary bills.

### CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

29. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are business entities for purposes of Plaintiff's claim for relief under the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. Also specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

30. **Numerosity.** The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

31. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b. Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such food;

    c. Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

    d. Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

    e. Whether Defendants' conduct constituted unlawful, unfair, or fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq., as alleged herein;

    f. Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein;

    g. Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages; and

    h. Whether Plaintiff and members of the Class are entitled to punitive damages, and, if so, in what amount.

32. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

33. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class-action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests

03/26/2007 13:44 FAX 916 568 7890     WEXLER TORISEVA WALLACE     @010/017

to those of the Class.

34. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

35. In the alternative, the Class may be certified because:

   a. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c. Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

03/26/2007  13:44   916 568 7890
03/26/2007 13:44 FAX  916 568 ●●●0     WEXLER TORISEVA WALLA●     ⌀011/017

36. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

37. Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class. Such monies are the property of the Plaintiff and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiff and the Class have an ownership interest. Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF
[Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*]

38. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

39. Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

40. Plaintiff and the proposed Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

41. Plaintiff's purchase of dog and cat food manufactured, distributed, marketed and sold by Defendants constitute "transactions" within the meaning of Civil Code section 1761(e) and 1770.

42. Defendants' conduct violated and continues to violate the CLRA in at least the following respects:

    a.    In violation of Section 1770(a)(1) of the CLRA, Defendants misrepresented the source, sponsorship, approval or certification of goods or services; and